**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.**

**LYNDON GRAY,** ) **[JURY DEMAND]**
Plaintiff, )
v. )
**CITY OF MIAMI, SHAWN COVERT** )
**CHARLES CHESTER, KEVIN HARRISON** )
**BELLO GIOJANI,** )
Defendants, )

**COMPLAINT**

Plaintiff, **LYNDON GRAY**, by and through counsel, and files his Complaint and alleges that:

**PARTIES**

1. Plaintiff, **LYNDON GRAY** is a resident of the State of Florida.

2. Defendant, **CITY OF MIAMI** is a municipal entity organized pursuant to the laws of Florida.

3. At the time of the incident complained herein, Defendant **SHAWN COVERT** was employed as a City of Miami law enforcement officer. **COVERT** is sued in his individual capacity.

4. At the time of the incident complained herein, Defendant **CHARLES CHESTER** was employed as a City of Miami law enforcement officer. **CHESTER** is sued in his individual capacity.

5. At the time of the incident complained herein, Defendant **KEVIN HARRISON** was employed as a City of Miami law enforcement officer. **HARRISON** is sued in his individual capacity.

6. At the time of the incident complained herein, Defendant **BELLO GIOJANI** was employed as a City of Miami law enforcement officer. **GIOJANI** is sued in his individual capacity.

7. All defendants, acted under color of statute, ordinance, regulation, custom, or usage, of Miami-Dade and/or the State of Florida.

**JURISDICTION & VENUE**

8. This action is brought pursuant to 42 USC § 1983 and 1988 regarding the violation of Plaintiff's rights under the First and Fourth Amendments of the United States Constitution. Plaintiff's closely related state law claims are within this Court's jurisdiction pursuant to 28 USC § 1367.

9. Venue is proper because a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of Florida.

10. All condition precedents have been satisfied including those set out in Fla. Stat. § 768.28.

## GENERAL FACTS

11. At approximately 1:30 AM on January 16, 2016, Verified Security System ("Verified") made a 911 call to the City of Miami Police Department. In the call, Verified stated that an African American male with a teal long sleeve shirt with pattern pants carrying an ax broke into the Family Dollar located at 3311 NW 17th Ave, Miami, Florida 33142.

12. After receiving the call, the dispatcher provided the following description of the suspect to the Defendants: a burglary was in progress by a black male armed with an ax inside the Family Dollar who was attempting to break the safe open. The dispatch further communicated to the Defendants that the suspect was in a teal shirt with patterned pants.

13. The suspect left the scene by the time Defendants arrived. Shortly after their arrival, City of Miami police officer Saenz detained Timothy Dorch. Timothy Dorch fit the description of the dispatch (i.e. African American male with a teal shirt and patterned pants). Saenz detained Dorch until Defendants could get access to Family Dollars' surveillance video to positively identify Dorch.

14. Lyndon Gray, an African American male, worked as a music mentor to at-risk youth at The Motivational Edge. The Motivational Edge is adjacent to the Family Dollar. During this incident, Gray was wearing a black shirt and non-patterned blue jeans. At approximately 2:15 AM, Gray was walking to his vehicle which was parked in front of The Motivational Edge and away from the crime scene. As Gray was attempting to unlock his car, Covert came out of the alleyway with a gun and screamed for Gray to go across the street. Gray immediately crossed the street.

15. At this point, Defendants were collectively waiting for the key holder so they could review the surveillance video of the burglary. Defendants were not actively conducting an

investigation but standing in front of their vehicles lollygagging. From the other side of the street, Gray politely asked Defendants if they could assist him in accessing his car so he could drive home. Defendants did not like the fact that Gray interrupted their conversation by asking for assistance, so they approached Gray.

16. Defendants informed Gray that he fit the description of someone in the area who had just committed a crime. Defendants made this misrepresentation despite the fact that Gray was wearing a black shirt and solid color blue jeans (i.e. no patterns). The only thing Gray had in common with the suspect was that he was an African American male. In fact, forty seven percent of the population in the area is African-American.

17. Gray explained to Defendants that he was a teacher at The Motivational Edge, where his car was parked and that he was hoping to get their help to access his vehicle. Instead of assisting Gray, Defendants began questioning him. Defendants informed Gray that he was being detained. In response, Gray asked why he was being detained. After receiving no response from Defendants, Gray said, "This stuff is the reason why the police are in the news. I didn't do anything."

18. After this statement was made, Defendants immediately rushed Gray and pushed him against the fence. One of the Defendants placed Gray into a chokehold until he could no longer breathe. At no point, did Gray resist the officers' arrest. At this moment, Gray feared for his life and felt as if he was going to die.

19. Defendants arrested Gray and placed him in handcuffs. Defendants then placed Gray in one of the Defendants' squad cars.

20. After Gray's arrest, Defendants continued to wait for the key holder. Family Dollar's key holder arrived on the scene and provided Chester access to the video. The video revealed that Dorch was the actual burglar and Chester positively identified Dorch as the burglar. Chester arrested Dorch at 3:10 AM.

21. After Dorch's arrest, Defendants continued to detain Gray in the squad car. Gray was in the squad car for nearly three hours. This is especially true where there was no reason to believe that Gray was the subject of the investigation after they arrested Dorch.

22. Defendants took Gray to jail and he was released at approximately 9:30 PM the next day.

23. As a result of this incident, Gray lost property and wages. Gray suffered immeasurable pain, discomfort, emotional distress, humiliation, and embarrassment as a result of this incident. Additionally, Gray incurred legal costs as a result of the incident.

24. Defendants' falsely arrested and imprisoned Gray on the charges of disorderly conduct and resisting an officer without violence. The State of Florida entered a *nolle prosequi* on both charges.

**Claim 1: FREE SPEECH RETALIATION in violation of 42 USC §1983**
**[Against COVERT, CHESTER, HARRISON, GIOJANI]**

25. This action is brought pursuant to 42 USC §1983 and in violation of Plaintiff's right to free speech as prescribed by the First Amendment of the United States Constitution and as applied to the states under the Fourteenth Amendment therein.

26. Gray engaged in conduct or speech protected by the First Amendment when he requested Defendants' assistance and stated: "This stuff is the reason why the police are in the news. I didn't do anything."

27. Defendants responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment right. Gray was arrested and choked by Defendants.

28. The protected activity caused the retaliation, but for Gray's speech he would not have been arrested or choked into submission.

29. Defendants acted under the color of law pursuant to the State of Florida. Defendants were municipally employed officers choking and arresting Gray pursuant to the laws of Florida.

**Claim 2: UNLAWFUL STOP in violation 42 USC §1983**
**[Against COVERT, CHESTER, HARRISON, GIOJANI]**

30. This action is brought pursuant to 42 USC §1983 in violation of Plaintiff's right to be free of an unreasonable seizure of Plaintiff's person as stated in the Fourth Amendment of the United States Constitution and as applied to the states under the Fourteenth Amendment therein.

31. Gray was subject to unlawful stop by said Defendants. Covert, Chester, Harrison, and Giojani unlawfully stopped Gray.

32. Defendants did not have reasonable suspicion to detain Gray. Covert, Chester, Harrison, and Giojani were sitting around lollygagging while waiting for the key holder. Defendants had a person in detention in which Chester provided sworn testimony that this person

matched the description of the suspect. Gray being an African-American male is not alone sufficient to stop him. Additionally, being an African-American male is not indicative that Gray had committed, was in the process of committing, or was going to commit a crime. This is especially true when 47 percent of the people located in the area where Gray was stopped are African-Americans. Gray simply requested Defendants' assistance.

33. As a result of Defendants' unlawful and intentional conduct, Gray's person was unreasonably seized. Had it not been for Defendants' stop without reasonable suspicion Gray would not have been detained in police custody for two to three hours.

34. Defendants acted under the color of law pursuant to the State of Florida. Defendants were municipally employed officers seizing Gray pursuant to the laws of Florida.

**Claim 3: FALSE ARREST in violation 42 USC §1983**
**[Against COVERT, CHESTER, HARRISON, GIOJANI]**

35. This action is brought pursuant to 42 USC §1983 in violation of Plaintiff's right to be free of an unreasonable seizure of Plaintiff's person as stated in the Fourth Amendment of the United States Constitution and as applied to the states under the Fourteenth Amendment therein.

36. Gray was subject to unreasonable seizure by said Defendants. Covert, Chester, Harrison, and Giojani arrested Gray. Gray was detained for approximately one day in Miami-Dade County jail.

37. Defendants did not have probable cause to arrest Gray. There was nothing that Defendants observed that showed that Gray had committed, was in the process of committing, or was going to commit a crime. Gray politely requested Defendants' assistance while they were lollygagging and waiting for the key holder. Defendants had another African-American male already in custody when Gray requested assistance. Gray was not carrying an ax and his clothing did not match the description of the dispatch. Gray was an African American male in an area where nearly half the population is African-American. Additionally, Gray's response that: "This stuff is the reason why the police are in the news. I didn't do anything," does not constitute probable cause for arrest. Covert, Chester, Harrison, and Giojani, further fabricated statements in their arrest affidavit to support probable cause which was inconsistent with the events that occurred on the night of the arrest.

38. As a result of Defendants' unlawful and intentional conduct, Gray's person was unreasonably seized. Had it not been for Defendants' arrest without probable cause, Gray would not have been detained in Miami-Dade County jail.

39. Defendants acted under the color of law pursuant to the State of Florida. Defendants were municipally employed officers arresting Gray pursuant to the laws of Florida.

**Claim 4: EXCESSIVE FORCE in violation of 42 USC §1983**
**[Against COVERT, CHESTER, HARRISON, GIOJANI]**

40. This action is brought pursuant to 42 USC § 1983 and in violation of Gray's right to be free of excessive force in the course of an arrest as prescribed by the Fourth Amendment of the United States Constitution and as applied to the states under the Fourteenth Amendment therein.

41. Pursuant to the Fourth Amendment, Gray had the right to be free from excessive force during the course of a criminal apprehension. The force applied to Gray was unreasonable under the circumstances. Defendants pushed and shoved Gray against a fence and then choked him into submission until he could no longer breathe. Gray complied with their unlawful detention and did not resist. Gray did not flee or attempt to flee. Gray did not threaten anyone and did not pose a threat to anyone. Defendant observed Gray's non-resistance yet continued to use excessive force, as well as choke Gray while he was already subdued. The crimes he was charged for were minor.

42. Had Defendants not applied excessive force to Gray when they clearly observed that he was not resisting, Gray would not have endured injuries in violation of the Fourth Amendment.

43. Defendants acted under the color of law pursuant to the State of Florida. Defendants were municipally employed officers apprehending Gray pursuant to the laws of Florida.

**Claim 5: FALSE ARREST/IMPRISONMENT violation in state law**
**[Against COVERT, CHESTER, HARRISON, GIOJANI]**

44. This action is brought pursuant to laws of the State of Florida and alleges that Covert, Chester, Harrison, and Giojani falsely arrested Gray. Gray was subject to an unlawful detention and deprivation of liberty against his will. Gray was detained for approximately one day in Miami-Dade County jail against his will.

45. The detention was unreasonable and not warranted by the circumstances. Based on the objective evidence known to Defendants at the time of Gray's arrest, Defendants knew there

was no probable cause to arrest for any offense under Florida law because the information within the collective knowledge of Defendants showed that:

a. The culprit who matched the description was already in the police's custody.

b. Gray being an African-American male near in a predominantly African-American community does not constitute the commission of a crime.

c. Gray's speech in requesting assistance from the officers and stating this is the reason why the officers are in the news is not probable cause for resisting an officer without violence, disorderly conduct, or any other crime under Florida law.

46. The detention was intentional. Defendants intended to cause the unlawful detention and deprive Gray of his liberty by executing a false arrest to support Gray's arrest. Moreover, individual officers' actions were done with bad faith, malicious purpose, or with willful, wanton, and deliberate indifference in regards to Gray's rights, health and safety, thus merits an award of punitive damages against said Defendants.

47. At the time of the arrest, Defendants did not have probable cause to arrest Gray for any crime.

**Claim 6: FALSE ARREST/IMPRISONMENT violation in state law**
**[Against CITY OF MIAMI][1]**

48. This action is brought pursuant to laws of the State of Florida and alleges that City of Miami falsely arrested Gray. Gray was subject to an unlawful detention and deprivation of liberty against his will. Gray was detained for 1 day in the Miami-Dade County jail against his will.

49. The detention was unreasonable and not warranted by the circumstances. Based on the objective evidence known to Defendants at the time of his arrest, Defendants knew there was no probable cause to arrest for any offense under Florida law because information known to the Defendant showed unequivocally that:

a. A culprit who matched the description was in the police's custody, while Gray did not match the description.

b. Gray being an African-American male near in a predominantly African-American community does not constitute the commission of a crime.

---

[1] Gray brings the state claims against City of Miami in the alternative because a jury could find the police officers did not act in bad faith, malicious purpose, or wanton and willful disregards for Gray's right.

c. Gray's speech in requesting assistance from the officers and stating this is the reason why the officers are in the news is not probable cause for resisting an officer without violence, disorderly conduct, or any other crime under Florida law.

50. The detention was intentional. Defendant intended to cause the unlawful detention and deprive Gray of his liberty.

51. At the time of the arrest, Defendant did not have probable cause to arrest Gray for any crime.

**Claim 7: EXCESSIVE FORCE**
**[Against COVERT, CHESTER, HARRISON, GIOJANI]**

52. This action is brought pursuant to laws of the State of Florida and alleges that Covert, Chester, Harrison, and Giojani applied excessive force upon Gray's person. Gray was battered by Defendants when they attacked him without provocation. The force applied was not reasonable under circumstances.

53. Gray was the subject of a harmful and offensive contact by said Defendants. Gray suffered repeated blows, brief loss of consciousness, and trauma to the body, thereby, injured by Defendant.

54. Defendants intended to cause the harmful and offensive contact with Gray's person by repeatedly beating him, then tackling and choking him when it was clear that Gray was subdued and not resisting. Moreover, individual officers' actions were done with bad faith, malicious purpose, or with willful, wanton, and deliberate indifference in regards to Gray's rights, health and safety, thus merits an award of punitive damages against said Defendants.

55. Defendants' conduct caused a harmful and excessive application of force on Gray's person. If it were not for the repeated punching, as well as tackling him to ground and choking Gray until he briefly loss consciousness then Gray would not have suffered a harmful and excessive application of force.

56. Gray did not consent to the harmful and excessive application force by said Defendants.

**Claim 8: EXCESSIVE FORCE [Against CITY OF MIAMI]**

57. This action is brought pursuant to laws of the State of Florida and alleges that City of Miami applied excessive force upon Gray's person. Gray was battered by Defendant when it attacked him without provocation. The force applied was not reasonable under circumstances.

58. Gray was subject of a harmful and offensive contact by said Defendant. Gray suffered repeated blows, brief loss of consciousness, and trauma to the body, thereby, injured by Defendant.

59. Defendant intended to cause the harmful and offensive contact with Gray's person by repeatedly beating him, then tackling and choking him when it was clear that Gray was subdued and not resisting.

60. Defendant's conduct caused a harmful and excessive application of force on Gray's person. If it was not for the repeated punching, as well as tackling him to ground and choking Gray until he briefly loss consciousness then Gray would not have suffered a harmful and excessive application of force.

61. Gray did not consent to the harmful and excessive application force by said Defendant.

**CLAIM 9: MALICIOUS PROSECUTION**
**[Against COVERT, CHESTER, HARRISON, GIOJANI]**

62. This action is brought pursuant to the laws of Florida against Covert, Chester, Harrison, and Giojani.

63. A criminal proceeding in the County Court of Miami-Dade County, Florida was commenced against Gray. The persons responsible for the initiation of the criminal proceeding were Defendants.

64. The criminal proceeding ended with the state dropping the charges.

65. There was an absence of probable cause for the original proceeding. At the time of the original proceeding, Defendants did not have probable cause to arrest or prosecute Gray for any of the charges. Specifically, the facts known to the Defendants were:

a. A culprit who matched the description was in the police's custody, while Gray did not match the description.
b. Gray being an African-American male near in a predominantly African-American community does not constitute the commission of a crime.
c. Gray's speech in requesting assistance from the officers and stating this is the reason why the officers are in the news is not probable cause for resisting an officer without violence, disorderly conduct, or any other crime under Florida law.

66. There was malice on the part of Defendants when they arrested and prosecuted Gray because they knew no crime had been committed to support the arrest and the continued prosecution. Defendants knew Gray was not the subject of the crime and, while Defendants were lollygagging, Gray had simply requested assistance to retrieve his vehicle. Instead, Defendants fabricated probable cause by stating that Gray failed to comply with Defendants' requests and he matched the description of the subject. This was false. Defendants were the driving force of the criminal proceeding against Gray as there were no other bases for the prosecution except for Defendants allegations.

67. Gray suffered damages as a result of the criminal proceeding. These damages include but not limited to emotional, physical, and financial injury. Gray suffered humiliation and embarrassment as result of this incident. Additionally, Gray incurred unnecessary legal costs as a result of the defense of this matter.

**PRAYER**

Wherefore, **Lyndon Gray**, for each and every cause of action above demands the following relief, jointly and severally, against all Defendants;

a. Compensatory general and special damages in an amount in accordance with proof;

b. Consequential Damages;

c. Exemplary damages, against each and every Defendant, for intentional acts described above or for those done negligently or recklessly or with deliberate indifference, in an amount sufficient to deter the conduct of said defendants;

d. Reasonable attorneys' fees and expenses of litigation, including those fees permitted by 42 U.S.C. § 1988;

e. Prejudgment Interests where permitted by law,

f. Punitive Damages against the individual Defendants.

g. Costs of suit and interest accrued incurred herein; and

h. Other forms equitable and/or legal relief the Court deems just or proper.

Respectfully Submitted,

s/Faudlin Pierre
Faudlin Pierre
Attorney for Plaintiff
18900 NE 1st Court

Miami, FL 33179
(305) 336-9193
FLA. #56770